IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANDREW G. CLARK, | Case No. 6:13-cv-01546-AA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| WELLS FARGO BANK, N.A., WELLS FARGO HOME MORTGAGE, and WELLS FARGO AND COMPANY, | |
| Defendants. | |

Andrew G. Clark
3270 Stoney Ridge Road
Eugene, Oregon 97405
    Pro se plaintiff

Christian Rowley
Peter D. Urias
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, California 94105

David C. Campbell
Sharon C. Peters
Williams Kastner & Gibbs, PLLC
888 S.W. Fifth Avenue, Suite 600
Portland, Oregon 97204
    Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendants Wells Fargo Bank and Wells Fargo Home Mortgage[1] (collectively "Wells Fargo") move to dismiss plaintiff Andrew Clark's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Wells Fargo's motion is granted and this case is dismissed.

## BACKGROUND

Beginning in September 2009, Clark was employed by Wells Fargo as a mortgage originator. At some point during his tenure at Wells Fargo, Clark began compiling reports regarding the bank's alleged violations of the Sarbanes-Oxley and Frank-Dodd Acts; he transmitted this information both internally and to various government agencies, including the Federal Bureau of Investigation and Central Intelligence Agency. In June 2011, Clark was terminated for repeatedly displaying unprofessional conduct. He then posted Wells Fargo's confidential and proprietary records, including private customer information, on his website.

On July 18, 2011, the Eugene Police Department contacted Clark at his home because Wells Fargo reported that he was trespassing and had sent an email referencing genocide. Police officers warned Clark to avoid Wells Fargo property in the future. On July 29, 2011, the police arrested Clark for second degree municipal trespass. Plaintiff was held in the Lane County jail for 18 hours before being released. The trespass charge was later dismissed.

---

[1] Clark elected not to serve the other listed Wells Fargo entity - i.e. Wells Fargo and Company - because he no longer perceives it as a necessary party. Defs.'s Mem. in Supp. of Mot. Dismiss 4, 16; Pl.'s Resp. to Mot. Dismiss 2, 18. Accordingly, pursuant to Clark's stipulation, Wells Fargo and Company is dismissed as a defendant from this action.

Page 2 - OPINION AND ORDER

In August 2011, Wells Fargo commenced a lawsuit seeking to enjoin Clark from publishing, controlling, disclosing, or retaining any of its equipment, confidential customer information, or trade secrets. Clark filed numerous motions, which, amongst other things, attacked Wells Fargo's counsel, Ogletree, Deakins, Nash, Smoak and Stewart, P.C. ("Ogletree"), and alleged that Wells Fargo was engaging in racketeering and retaliation; the Court denied each of Clark's motions. The Court, however, permitted Wells Fargo to file documents reflecting Clark's inappropriate correspondences under seal.

On October 5, 2012, after two hearings, the Court granted summary judgment in favor of Wells Fargo and entered a permanent injunction. See generally Wells Fargo Bank, N.A. v. Clark ("Clark I"), 2012 WL 4794156 (D.Or. Oct. 5, 2012). At that time, the Court held Clark in contempt for failing to "comply with standards of professionalism in all his communications with Wells Fargo and its counsel." Id. at *5-7. Clark sent hundreds of emails and faxes to Ogletree, some of which were threatening and/or obscene, and all of which "had little to no bearing upon [any] legal issue between plaintiff and defendant," despite being repeatedly instructed by the Court "to limit his communications to plaintiff's counsel's firm in Portland and to keep those to a strictly professional tone." Id. Thereafter, the Court denied several motions for reconsideration filed by Clark. See generally Wells Fargo Bank, N.A. v. Clark ("Clark II"), 2013 WL 2038561 (D.Or. May 14, 2013).

On July 18, 2013, police officers arrived at Clark's home to interview him about certain faxes and emails he had sent Ogletree and one of its attorneys, Leah Lively. Although Clark denied that

Page 3 - OPINION AND ORDER

the communications at issue were threatening, officers warned him if he continued to communicate inappropriately with Ogletree and Lively, he may be criminally charged with stalking. On July 23, 2013, Clark sent another fax to Ogletree and Lively in contravention of police orders. On July 25, 2013, Clark was arrested and charged with ten counts of stalking; he was jailed for six days and released with an electronic ankle bracelet after posting bail.

On August 3, 2013, Clark initiated this lawsuit against Wells Fargo, Ogletree, and Securitas Corporation ("Securitas"), as well as certain individually named employees, alleging: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (claims one through nine); (2) deprivation of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 (claims ten and twelve); (3) defamation (claim eleven); (4) violations of the Occupational Safety and Health Act ("OSHA") (claim thirteen); (5) gross negligence (claim fourteen); and (6) a conspiracy against constitutional rights in violation of 18 U.S.C. §§ 241, 242 (claim fifteen).[2] That same day, Clark effectuated service on Ogletree and Securitas.

On September 26, 2013, Ogletree moved to dismiss Clark's complaint or, alternatively, appoint a guardian ad litem. On October 21, 2013, Securitas filed a motion to dismiss Clark's claims. On October 24, 2013, pursuant to notification by the Lane

---

[2] Clark additionally lists libel, false light, invasion of privacy, and violations of the Oregon Safe Employment Act as causes of action without any specific allegations in support thereof. The Court therefore declines to address these claims further.

Page 4 - OPINION AND ORDER

County Circuit Court, the Court stayed these proceedings pending resolution of the criminal stalking charges brought by Ogletree and Lively. On January 9, 2014, Clark entered into a plea agreement, which, in relevant part, precludes him from contacting Ogletree or its attorneys, except through counsel, for ten years.

On January 31, 2014, the Court resolved several motions filed by Clark. Notably, the Court dismissed Securitas and all of the individually named defendants pursuant to Clark's stipulations. Moreover, based on the terms of the plea agreement entered into by Clark and the Lane County District Attorney's Office, the Court also dismissed Ogletree from this lawsuit unless and until Clark retains counsel, leaving Wells Fargo as the only remaining defendant. Accordingly, the Court denied Securitas's and Ogletree's motions to dismiss is moot. On April 29, 2014, Clark effectuated service on Wells Fargo. On May 20, 2014, Wells Fargo moved to dismiss Clark's complaint.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S.

662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

## DISCUSSION

Wells Fargo contends that, "[g]iven Clark's failure to allege plausible facts supporting his claims, Clark's complaint and each Count thereof should be dismissed for failure to state a claim." Defs.'s Mem. in Supp. of Mot. Dismiss 3. In the alternative, "Wells Fargo joins Ogletree's Motion to Appoint a Guardian ad Litem, pursuant to Fed. R. Civ. P. 17(c), due to Clark's well-documented history of mental instability and harassment of opposing counsel." Id. at 16.

I. Preliminary Matters

Three factual issues merit clarification before the Court reaches the substantive merits of Wells Fargo's motion.

A. Remaining Parties

Clark asserts repeatedly that Ogletree and the Eugene Police Department are agents of or engaged in a conspiracy with Wells Fargo. See, e.g., Pl.'s Resp. to Mot. Dismiss 2, 32³; see also Compl. ¶¶ 50, 59, 62. Although Clark concludes that an agency relationship exists, none of his factual allegations demonstrate

---

³ Ordinarily, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Nevertheless, in light of Clark's pro se status, and in order to provide the most complete review of this dispute, the Court considers new allegations contained in Clark's opposition, as well as the "evidence" he cites from his website, www.risepatriot.com, in evaluating Wells Fargo's motion.

Page 6 - OPINION AND ORDER

that the investigating officers or Ogletree were subject to the control of Wells Fargo, except to the extent Ogletree performed legal services on behalf Wells Fargo. See Eads v. Borman, 351 Or. 729, 735-36, 277 P.3d 503 (2012) (defining an agency relationship). Likewise, his assertions concerning a conspiracy are vague and conclusory, such that they lack the requisite specificity to be considered plausible. Regardless, as Clark acknowledges, Ogletree is no longer a party to this lawsuit. Further, the Eugene Police Department and/or the City of Eugene are not, and never have been, named as defendants. Thus, neither Ogletree's nor the police's alleged actions are actionable at this stage in the proceedings.

B.  Underlying Criminal Conviction for Stalking

Clark devotes considerable portions of his complaint and response to collaterally attacking his criminal conviction for stalking. See, e.g., Pl.'s Resp. to Mot. Dismiss 10-11, 21; see also Compl. ¶¶ 21, 51, 59. Clark also filed a motion with this Court impugning his plea deal and indicating that he would appeal that conviction. See generally Pl.'s Mot. to Augment the Record.

Initially, this Court is without authority to overturn or otherwise alter a state court judgment in this context. See Weems v. Or. Univ. Sys., 2012 WL 4093539, *3-4 (D.Or. Sept. 17, 2012), aff'd, 2014 WL 1409992 (9th Cir. Apr. 14, 2014) (explaining the Rooker-Feldman doctrine, which "bars any suit that seeks to disrupt or undo a prior state-court judgment, regardless of whether the state court proceeding afforded the federal court plaintiff a full and fair opportunity to litigate [his] claims") (citations and internal quotations omitted).

Further, because Clark was criminally convicted, the alleged

Page 7 - OPINION AND ORDER

actions of Wells Fargo that precipitated his arrest are not litigable at this time. This is especially appropriate given that, as discussed above, there are no well-pleaded allegations indicating that Wells Fargo was responsible for or involved in the charges Ogletree and Lively filed against him. In other words, any allegations of kidnaping or wrongdoing relating to this event are not plausible. In fact, Clark's plea agreement, wherein he stipulated to one count of stalking, establishes that Ogletree's and Lively's complaints, as well as the actions of law enforcement in charging him and taking him into custody, were legally valid. Accordingly, Clark's claims that are premised on his July 2013 interactions with the police and subsequent arrest and criminal conviction fail.

    C.  <u>Previous Lawsuit with Wells Fargo</u>

Clark's claims are based, in part, on the alleged injustices he suffered pursuant to his previous litigation with Wells Fargo, including the fact that the Court permitted Ogletree to file certain documents under seal. <u>See, e.g.</u>, Compl. ¶¶ 9-32, 39-42, 44; <u>see also</u> Pl.'s Resp. to Mot. Dismiss 38. Clark, however, did not appeal that lawsuit. In any event, because those issues were previously litigated between the same parties and resulted in a final judgment, they cannot form the basis of this action. <u>See generally</u> <u>Clark I</u>, 2012 WL 4794156 (D.Or. Oct. 5, 2012); <u>see also</u> <u>Clark II</u>, 2013 WL 2038561 at *1 (denying Clark's motions regarding a mistrial, RICO claims, and to unseal PACER accounts); <u>Siegel v. Fed. Home Loan Mortg. Corp.</u>, 143 F.3d 525, 528-29 (9th Cir. 1998) (claim preclusion, also known as res judicata, "bars all grounds for recovery that could have been asserted, whether they were or

Page 8 - OPINION AND ORDER

not, in a prior suit between the same parties on the same cause of action") (internal citation omitted). As such, to the extent this lawsuit involves related claims or causes of action, res judicata precludes re-litigation of those issues.

II. <u>Racketeer Influenced and Corrupt Organizations Act Claims</u>

Clark alleges that Wells Fargo violated RICO by "actively corrupt[ing] local police with falsifications, innuendo, and abuse of authority to induce them to perform Plaintiff's removal from his home and related jailing," such that "their actions fully meet the definitions of kidnaping described in 18 U.S.C. § 1201." Compl. ¶¶ 62, 65. In addition, Clark asserts that Wells Fargo improperly filed documents under seal in its previous lawsuit, retaliated against him for "providing . . . the FBI [with] reports," and "intentionally harassed [him] by malicious prosecution of groundless civil and criminal offenses." Id. at ¶¶ 70-73, 78.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); see also 18 U.S.C. § 1961(1) ("racketeering activity" includes any act "indictable" under certain enumerated federal criminal statutes).[4] To state a RICO claim, "a plaintiff

---

[4] Clark opposes dismissal, in part, because "the State of Oregon has its own set of Racketeering and Kidnaping laws [and Wells Fargo] has not discussed that aspect." Pl.'s Resp. to Mot. Dismiss 37. Clark's complaint only alleges claims under the federal RICO statute, such that it was unnecessary for Wells Fargo to brief Oregon's racketeering requirements. See, e.g., Compl. ¶¶ 60-78. In any event, any state law racketeering claims fail for the same reasons as Clark's federal RICO claims.

Page 9 - OPINION AND ORDER

must plead facts establishing: (1) that the defendant; (2) through the commission of predicate criminal acts which constitute a pattern of racketeering activity; (3) directly or indirectly invests in, or maintains an interest in, or participates in; (4) an enterprise." See Hogan v. NW Trust Servs., Inc., 2010 WL 1872945, *10 (D.Or. May 7, 2010), aff'd, 441 Fed.Appx. 490 (9th Cir. 2011) (citation omitted). A pattern of racketeering "must be based on at least two acts of racketeering, must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Cooper Indus., Inc. v. Lagrand Tire Chains, 205 F.Supp.2d 1157, 1165 (D.Or. 2002) (citations omitted).

Clark's RICO claims are defective in many respects. First, because Wells Fargo is the only remaining defendant, Clark's complaint fails to allege the existence of both a "person" and a distinct "enterprise," the affairs of which that "person" improperly conducts. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-66 (2001) (explaining distinctness requirement). Second, Clark does not plead what was specifically communicated by Wells Fargo to the police or Ogletree, or when and by what means the alleged misrepresentations took place. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (RICO claims based on a false representation must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation") (citation and internal quotations omitted). Third, although Clark makes general and conclusory statements about the predicate acts of tampering, destruction or falsification of records, and retaliation, he nonetheless neglects to provide the required specificity.

Page 10- OPINION AND ORDER

Regarding his allegations concerning the predicate act of kidnaping, the only direct wrongdoing that Clark alleges against Wells Fargo is contacting the Eugene Police Department. See Pl.'s Resp. to Mot. Dismiss 33 ("I am not including the City of Eugene police as participants in RICO [instead] I allege and evidence that Defendant transmitted lies and used various forms of undue influence to affect illegitimate and illegal police activity"). Given that the police have an independent duty to investigate any report of potential criminal activity, this allegation is inadequate to state a RICO claim against Wells Fargo. See Kahre v. Damm, 342 Fed.Appx. 267, 268 (9th Cir. 2009) (legitimate law enforcement activity cannot serve as the basis of a RICO claim). In any event, Clark cannot establish the predicate act of kidnaping because he was not transported across state lines, which is a requisite element. See 18 U.S.C.§ 1201(a)(1).

Even if Clark's allegations of lawful arrest and litigation conduct are construed as predicate acts, he fails to evince a pattern of racketeering activity. Indeed, his complaint refers to a single scheme perpetrated by Wells Fargo: "Defendants all have a monetary, professional, and/or political benefit in kidnaping Plaintiff to terrorize and destable him in order to conceal their illegal activity." Compl. ¶ 64; see also SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990) (pattern of illegal activity requirement unsatisfied where, "[w]hile the plaintiffs may have alleged a closed-ended series of predicate acts, they constituted a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities"). Similarly, Clark does not assert facts

Page 11- OPINION AND ORDER

sufficient for the Court to conclude that there is any continuing threat of criminal activity; he neither outlines any ongoing relationship with Wells Fargo, outside of this lawsuit, nor asserts that Wells Fargo engaged in these allegedly wrongful practices as "a regular way of conducting [their] ongoing legitimate business[es]." H.J. Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 242 (1989). For these reasons, Wells Fargo's motion is granted as to Clark's RICO claims.

III. 42 U.S.C. § 1983 Claims

Clark next asserts that Wells Fargo deprived him of his substantive and procedural constitutional rights, in violation of 42 U.S.C. § 1983, by reporting: (1) inaccurate information to the police, which resulted in his arrest and "internet defaming" via "the publication of the arrest 'mugshots' with summaries of charges"; and (2) to the District Court that he had sent threatening faxes and emails, which resulted in him being held in contempt. Compl. ¶¶ 79-96, 109-15.

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. See L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993). In other words, there is no right to be free from the infliction of constitutional deprivations by private parties, "no matter how discriminatory or wrong." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and internal quotations omitted). Courts employ "four different criteria" to identify state action: (1) public function;

Page 12- OPINION AND ORDER

(2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1092 (9th Cir. 2003) (citations and internal quotations omitted).

Even assuming that Wells Fargo's alleged actions violated an established right, Clark's 42 U.S.C. § 1983 claims fail because he neglected to allege the requisite state action. Indeed, beyond concluding that "all Defendants were acting under color of law," Clark does not address how the state was involved in the alleged violation of his constitutional rights. Compl. ¶ 81. In any event, a private bank and its employees function to provide financial services to the community. This function, however, is not "traditionally and exclusively governmental." <u>Kirtley</u>, 326 F.3d at 1093; <u>see also</u> <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 158 (1978) ("[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State'"). Further, neither Wells Fargo nor its employees are appointed or paid by the state, and they act independently thereof. <u>See</u> <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1486 (9th Cir. 1995) (no joint action exists where "benefits of [state-law designated loan guarantor] flow directly to students, not to the state itself," even while "in a broad sense" conferring public benefits).

The state also does not direct a specific outcome in regard to the services Wells Fargo provides or the actions Wells Fargo takes in regard to its staff; rather, those decisions lie within Wells Fargo's discretion. <u>See</u> <u>Mathis v. Pac. Gas & Electric Co.</u>, 75 F.3d 498, 503-04 (9th Cir. 1996) (no state action where the plaintiff failed to present evidence that state officials participated in the

Page 13- OPINION AND ORDER

actual decision to terminate him). As Clark points out, Wells Fargo is regulated by the government and is qualified to provide financial services pursuant to federal and state law. See Pl.'s Resp. to Mot. Dismiss 13. Yet "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Moreover, Clark does not allege that the police participated in Wells Fargo's administration of financial services or in the development or implementation of Wells Fargo's polices.

In other words, Clark's contention that Wells Fargo, or Ogletree as its agent, and the Eugene Police Department were acting in concert with each other amounts to nothing more than a description of a citizen making a complaint and the officer making an independent judgment that an arrest was warranted. See Levi v. Safeway, 1994 WL 706341, *3-4 (N.D.Cal. Dec. 12, 1994), aff'd, 94 F.3d 652 (9th Cir. 1996) (no state action where, although the plaintiff "generally alleges multiple conspiracies to violate his rights [between the defendant, a private corporation, and the police], he has not stated any facts to support his conclusory allegations that these conspiracies existed"); see also Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989), cert. denied, 493 U.S. 1056 (1990) ("merely complaining to the police" or "executi[ng] a sworn complaint which forms the basis of an arrest" does "not convert a private party into a state actor") (citations omitted). In sum, Clark does not plausibly assert, nor can he, that the state has so far insinuated itself into a position of interdependence with or control over Wells Fargo that it could be considered a joint participant in the challenged conduct. See

Page 14- OPINION AND ORDER

Torabi v. Wash. Mut. Bank, 2013 WL 6229349, *4 (S.D.Cal. Dec. 2, 2013) (private banks are ordinarily not state actors for the purposes of a 42 U.S.C. § 1983 claim). Wells Fargo's motion is granted as to Clark's 42 U.S.C. § 1983 claims.

IV. Defamation Claim

Clark contends that Wells Fargo "caused the police actions that resulted in extreme defaming within the community due to internet access" and "collected emotional fax material they attributed to Plaintiff from their office fax machines and placed it into Courts." Compl. ¶¶ 97-108. Clark elaborates upon these allegations in his opposition, explaining that the first instance of defamation relates to a 1979 criminal conviction that Ogletree raised during his previous lawsuit with Wells Fargo; the second instance of defamation transpired via the allegedly false statements Wells Fargo or Ogltetree made to police officers. Pl.'s Resp. to Mot. Dismiss 46-47.

To allege a claim for defamation, the complaint must assert facts sufficient to establish that the defendant published to a third person a false and defamatory statement about the plaintiff. Marleau v. Truck Ins. Exchange, 333 Or. 82, 94, 37 P.3d 148 (2001). An absolute privilege exists, however, where the publication was consented to or made in the context of a judicial or quasi-judicial proceeding. Wallulis v. Dymowski, 323 Or. 337, 348-49, 918 P.2d 755 (1996) (citations omitted).

As a preliminary matter, in part because Clark never details what Wells Fargo communicated to whom, it is not clear from the face of his complaint that the allegedly defamatory statements were, in fact, false. Specifically, Clark does not dispute that he

Page 15- OPINION AND ORDER

participated in criminal proceedings in 1979 or authored and sent the communications underlying the contempt order and his stalking conviction. <u>See generally</u> Compl.; <u>see also</u> Pl.'s Resp. to Mot. Dismiss 46 (noting only that his previous criminal "matters were legally expunged in the State of Oregon"). Regardless, the defamatory publications identified by Clark occurred during judicial proceedings and/or appear on his website. As such, assuming these allegedly defamatory actions can be properly attributed to Wells Fargo, Wells Fargo is protected by absolute privilege.

Finally, to the extent Clark attempts to distinguish his publication of the allegedly defamatory material from that of Wells Fargo, his argument is unavailing. Clark asserts "[a]ny content I placed on the Internet can be instantly removed by me [such that it] is not permanently defaming." Pl.'s Resp. to Mot. Dismiss 15. Yet permanence, or lack thereof, is not an element of defamation. Accordingly, the fact that Clark can remove content from his website but not a criminal database or court record is immaterial. Therefore, Wells Fargo's motion to dismiss is granted in this regard.

V.   <u>Occupational Safety and Health Act Claim</u>

Clark also alleges that Wells Fargo violated OSHA by refusing to block his fax number and employing "police and security forces in the workplace," both of which represented "grossly unreasonable response[s]" to his correspondences. Compl. ¶¶ 117-19. "OSHA does not provide a private right of action for employees to bring claims in federal court based on alleged violations of its provisions or associated regulations." <u>Jacobsen v. N.Y.C. Health & Hosps. Corp.</u>,

Page 16- OPINION AND ORDER

2013 WL 4565037, *7 (S.D.N.Y. Aug. 28, 2013) (collecting cases); Boyd v. Accuray, Inc., 2012 WL 4936591, *6 (N.D.Cal. Oct. 17, 2012) ("OSHA does not provide a private right of action"). Thus, Wells Fargo's motion is granted as to Clark's OSHA claim.

VI. Negligence

Clark asserts that Wells Fargo was negligent in performing its "duties of care to Plaintiff with respect to conducting criminal and/or civil accusations" and are "legally responsible for . . . the filing of police reports based on accurate information." Compl. ¶¶ 121-22.

To state a negligence claim under Oregon law, plaintiff must establish "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, i.e., a causal link between the breach of duty and the harm." Swanson v. Coos Cnty., 2009 WL 5149265, *5 (D.Or. Dec. 22, 2009) (citing Stevens v. Bispham, 316 Or. 221, 227 851 P.2d 556 (1993)). Whether a duty exists is a question of law to be determined by the court. Brown v. Far W. Fed. Sav. & Loan Ass'n, 66 Or.App. 387, 392, 674 P.2d 1183 (1984) (citation omitted). Generally, no duty exists where "a private citizen merely lays the facts before a police officer and the officer, relying on his judgment and discretion, makes an arrest." Id. at 390 (citation omitted). Due to public policy considerations, a person who mistakenly summons the police "cannot be held liable for damages due to negligence in reporting the crime or instigating the arrest." Id. at 392 (citation omitted).

Here, the Court finds that these public policy considerations preclude the imposition of a duty on Wells Fargo or its employees

Page 17- OPINION AND ORDER

to investigate further Clark's purported criminal conduct before calling the police. Despite concluding that Wells Fargo's intent was malicious and retaliatory, there are no well-plead allegations evincing that Wells Fargo called the police in bad faith or otherwise did not reasonably believe that Clark imposed a threat or was trespassing. See Dauven v. U.S. Bank Nat'l Ass'n, 2010 WL 2640119, *6-10 (D.Or. June 7), adopted by 2010 WL 2640115 (D.Or. July 1, 2010). In fact, although Clark never specifically articulates what was false about Wells Fargo's communications with the police, there is no indication from the general factual recitations in Clark's complaint that Wells Fargo's statements were defamatory or otherwise inaccurate. Clark therefore cannot state a claim for negligence and Wells Fargo's motion is granted as to this issue.

VII. Conspiracy Against Constitutional Rights Claim

Lastly, Clark alleges that Wells Fargo violated 18 U.S.C. §§ 241 and 242 by engaging in a criminal conspiracy to defame him, deprive him of his rights, and impair "[h]is ability to preform his family responsibility relating to retarded adult offspring" and earn a livelihood.[5] Compl. ¶¶ 128-32. As criminal statutes, 18 U.S.C. §§ 241 and 242 do "not provide a person with a private right of action to pursue a claim for civil liability." Cooper v. Welsh, 2010 WL 3943000, *4 (E.D.Cal. Oct. 1, 2010) (citing Allen v. Gold

---

[5] Clark's complaint refers exclusively to 18 U.S.C. §§ 241 and 242; however, his response also cites to 42 U.S.C. §§ 241 and 242. See Pl.'s Resp. to Mot. Dismiss 17. The Court presumes that this was a clerical error and that Clark intended to exclusively assert a claim under 18 U.S.C. §§ 241 and 242, as 42 U.S.C. §§ 241 and 242, which govern public health research and funding, are inapplicable here. See Pl.'s Am. Resp. to Mot. Dismiss 2.

Page 18- OPINION AND ORDER

Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006), cert. denied, 549 U.S. 1231 (2007); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)). As such, Wells Fargo's motion is granted.

## CONCLUSION

Wells Fargo's motion to dismiss (doc. 48) is GRANTED and this case is DISMISSED. Clark's request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED

Dated this ___1___ of July 2014.

_____
Ann Aiken
United States District Judge